JP:WMP

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M-08-445.**

- - - - - - - - - - - - - - - - X

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

IN THE MATTER OF THE
EXTRADITION OF

      KUSHI SAMUELS,
           also known as,
           "Patrick Browne" and
           "Abdul Drew."

(T. 18, U.S.C., § 3184)

- - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

         I, Winston M. Paes, being duly sworn, depose and state

that I am an Assistant United States Attorney for the Eastern

District of New York and act for and on behalf of the Government

of Canada (the "Requesting State") pursuant to the Extradition

Treaty between the United States of America and Canada, signed on

December 3, 1971, amended on June 28, 1974 and July 9, 1974, and

entered into force on March 22, 1976, (the "Treaty," attached

hereto as Exhibit A) with respect to KUSHI SAMUELS, also known as

"Patrick Browne" and "Abdul Drew" (the "defendant").

         In accordance with Title 18, United States Code,

Section 3184, I charge, on information and belief,[1] as follows:[2]

---

   [1]    The information contained herein is derived from (1)
correspondence from the United States Department of Justice,
Office of International Affairs and (2) a request for a
provisional arrest warrant from the Montreal City Police
Department.

   [2] Because the purpose of this Complaint is to establish
only probable cause to arrest, I have not set forth a description

          1.    <u>Foreign charge.</u>  The defendant KUSHI SAMUELS, also known as "Patrick Browne" and "Abdul Drew," is charged, in the jurisdiction of the Requesting State, with the crimes of: one count of murder and two counts of attempted murder in violation of Sections 235 and 239 of the Criminal Code of Canada.  Article 2, and Schedule of Offenses, Item 1, of the Treaty provide that a charge for such offenses shall serve as the basis for extradition.  Article 11 of the Treaty provides for the provisional arrest of persons charged with an extraditable offense under Article 2.

          2.    <u>Foreign arrest warrant.</u>  A warrant for the defendant KUSHI SAMUELS's arrest was issued on May 9, 1995, by Judge Jean Parent in the Judicial District of Montreal, Quebec, Canada.

          3.    <u>Facts underlying foreign charge.</u>

          a.    According to an investigation by authorities of the Requesting State, the defendant KUSHI SAMUELS and another individual, Desta Barnes, were involved in a shooting on Saturday, April 22, 1995 at a reception hall at 4225 Notre Dame West in Montreal, Canada (the "reception hall").  At approximately 10:45 p.m., the defendant and Mr. Barnes entered the reception hall, where an anniversary was being celebrated.

---

of all the facts and circumstances of which the government is aware.

They were observed to be holding something under a cloth.  At some point, an individual identified as Nicholas Rodriguez proceeded to leave the reception hall.  The defendant and Mr. Barnes followed Mr. Rodriguez outside the reception hall and opened fire on Mr. Rodriguez and his friend, Miguel Millings. Mr. Rodriguez was struck by three bullets and Mr. Millings was struck by one bullet in the eye.  The defendant then went back into the reception hall and opened fire on the people on the dance floor.  An individual named Asher Yancy Manget was struck by several bullets and sustained injuries to his knee cap, thigh and hand.  The defendant and Mr. Barnes were seen fleeing the scene on foot.

b.    The shootings resulted in the death of Mr. Rodriguez, while Mr. Millings became paralyzed from the waist down and lost an eye.

c.    Mr. Manget, who sustained injuries from the shooting, identified the defendant KUSHI SAMUELS and Mr. Barnes as the shooters.  Mr. Manget knew the defendant from having previously lived with him.

d.    On May 29, 1996, Mr. Barnes was a victim of a homicide in the State of Florida.

4.   Defendant KUSHI SAMUELS's presence in the United States.  There is probable cause to believe that the defendant KUSHI SAMUELS, who is within the jurisdiction of this Court, may

-3-

be found at 9720 Kings Highway, Apartment 211, Brooklyn, New York
11212.  In particular, the defendant's ex-girlfriend, Shameka
Small, resides in the apartment.  The super of the building
identified a picture of the defendant and confirmed that the
defendant "usually" resides in the apartment with his ex-
girlfriend and her child.  The super of the building also stated
that he last saw the defendant in the apartment on Friday, May 2,
2008.

        5.    The Defendant KUSHI SAMUELS's description.  The
defendant KUSHI SAMUELS, a citizen of Canada, was born on
December 21, 1976 in Montreal, Canada.  A copy of the defendant's
photograph is attached hereto as Exhibit B for identification
purposes.

        6.    Risk of flight.  The likelihood of flight is
substantial if the fugitive, the defendant KUSHI SAMUELS, learns
of the request prior to arrest.  Whereupon, your complainant
requests:

        a.    that a warrant be issued pursuant to Title
18, United States Code, Section 3184, for the defendant KUSHI
SAMUELS's arrest;

        b.    that the defendant KUSHI SAMUELS be brought
before this Court and the evidence of criminality be heard;

        c.    that if, on such hearing, the Court deems the
evidence sufficient under the provisions of the Treaty to sustain

-4-

the charge, the Court certify the same to the Secretary of State
in order that a warrant may be issued for the surrender of the
defendant KUSHI SAMUELS to the appropriate authorities of the
Requesting State according to the Treaty; and

d.    that this Court take such other actions as
may be required under the provisions of the Treaty and the laws
of the United States to meet the obligations of the United States
under the Treaty, including the seizure of any items or materials
in the defendant KUSHI SAMUELS's possession at the time of
apprehension which are related to the crimes charged or which may
be used as evidence, pursuant to the Treaty.

WHEREFORE, your deponent respectfully requests that an
arrest warrant be issued for the defendant KUSHI SAMUELS so that
he may be dealt with according to law.

                                    BENTON J. CAMPBELL
                                    United States Attorney

                    By:    _____

                                    Winston M. Paes
                                    Assistant U.S. Attorney

Sworn to before me this
9th day of May, 2008


                           GE


                          -5-

# EXHIBIT A

LEXSEE 27 U.S.T. 983

U.S. Treaties on LEXIS

CANADA

Extradition

TIAS 8237

*27 U.S.T. 983; 1971 U.S.T. LEXIS 226*

December 3, 1971, Date-Signed; June 28, 1974, Date-Signed; July 9, 1974, Date-Signed

March 22, 1976, Date-In-Force

**STATUS:**
 [*1]  Treaty signed at Washington December 3, 1971;
And agreement amending the treaty
Effected by exchange of notes
Signed at Washington June 28 and July 9, 1974;
Ratification of the treaty, as amended, advised by the Senate of the United States of America December 1, 1975;
Ratified by the President of the United States of America December 12, 1975;
Ratified by Canada February 2, 1976;
Ratifications exchanged at Ottawa March 22, 1976;
Proclaimed by the President of the United States of America May 6, 1976;
Entered into force March 22, 1976.

TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA
AND CANADA
TRAITE D'EXTRADITION ENTRE LES ETATS-UNIS D'AMERIQUE ET LE CAN-
ADA

**TEXT:**
BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

**A PROCLAMATION**

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Canada was signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974, the original of which Treaty, as amended, is hereto annexed;

The Senate of the United States of America by its resolution of December 1, 1975, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty,  [*2]  as amended;

The Treaty was ratified by the President of the United States of America on December 12, 1975, in pursuance of the advice and consent of the Senate, and has been duly ratified on the part of Canada;

The respective instruments of ratification were exchanged at Ottawa on March 22, 1976;

It is provided in Article 18 of the Treaty that the Treaty shall enter into force upon the exchange of ratifications;

Now, THEREFORE, I, Gerald R. Ford, President of the United States of America, proclaim and make public the Treaty, as amended, to the end that it shall be observed and fulfilled with good faith on and after March 22, 1976, by the

United States of America and by the citizens of the United States of America and all other persons subject to the juris-diction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of May in the year of our Lord one thousand nine hundred seven-ty-six and of the Independence of the United States of America the two hundredth.

The United States of America and Canada, desiring to make more effective the cooperation of the two countries [*3] in the repression of crime by making provision for the reciprocal extradition of offenders, agree as follows:

ARTICLE 1

Each Contracting Party agrees to extradite to the other, in the circumstances and subject to the conditions described in this Treaty, persons found in its territory who have been charged with, or convicted of, any of the offenses covered by Article 2 of this Treaty committed within the territory of the other, or outside thereof under the conditions specified in Article 3(3) of this Treaty.

ARTICLE 2

(1) Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty, which is an integral part of this Treaty, provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year.

(2) Extradition shall also be granted for attempts to commit, or conspiracy to commit or being a party to any of the offenses listed in the annexed Schedule.

(3) Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed Schedule, or made extraditable by paragraph (2) of this [*4] Article, is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense.

ARTICLE 3

(1) For the purpose of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including air space and territorial waters and vessels and aircraft registered in that Contracting Party or aircraft leased without crew to a lessee who has his principal place of business, or, if the lessee has no such place of business, his permanent residence in, that Contracting Party if any such aircraft is in flight, or if any such vessel is on the high seas when the offense is committed. For the purposes of this Treaty an aircraft shall be considered in flight from the moment when power is applied for the purpose of the take-off until the moment when the landing run ends.

(2) In a case when offense 23 of the annexed Schedule is committed on board an aircraft at any time from the mo-ment when all its external doors are closed following embarkation until the moment when any such door is opened for disembarkation, such offense and any other offense covered by Article [*5]  2 committed against passengers or crew of that aircraft in connection with such offense shall be considered to have been committed within the territory of a Con-tracting Party if the aircraft was registered in that Contracting Party, if the aircraft landed in the territory of that Con-tracting Party with the alleged offender still on board, or if the aircraft was leased without crew to a lessee who has his principal place of business, or, if the lessee has no such place of business, his permanent residence in that Contracting Party.

(3) When the offense for which extradition has been requested has been committed outside the territory of the re-questing State, the executive or other appropriate authority of the requested State shall have the power to grant the extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circums-tances.

ARTICLE 4

(1) Extradition shall not be granted in any of the following circumstances:

(i) When the person whose surrender is sought is being proceeded against, or has been tried and discharged or pu-nished in the territory of the requested State for the offense for which his extradition is requested.

(ii)  [*6]  When the prosecution for the offense has become barred by lapse of time according to the laws of the requesting State.

(iii) When the offense in respect of which extradition is requested is of a political character, or the person whose extradition is requested proves that the extradition request has been made for the purpose of trying or punishing him for an offense of the above-mentioned character. If any question arises as to whether a case comes within the provisions of this subparagraph, the authorities of the Government on which the requisition is made shall decide.

(2) The provisions of subparagraph (iii) of paragraph (1) of this Article shall not be applicable to the following:

(i) A kidnapping, murder or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt to commit such an offense with respect to any such person.

(ii) When offense 23 of the annexed Schedule, or an attempt to commit, or a conspiracy to commit, or being a party to the commission of that offense, has been committed on board an aircraft engaged in commercial services carrying passengers.  [*7]

ARTICLE 5

If a request for extradition is made under this Treaty for a person who at the time of such request, or at the time of the commission of the offense for which extradition is sought, is under the age of eighteen years and is considered by the requested State to be one of its residents, the requested State, upon a determination that extradition would disrupt the social readjustment and rehabilitation of that person, may recommend to the requesting State that the request for extradition be withdrawn, specifying the reasons therefor.

ARTICLE 6

When the offense for which extradition is requested is punishable by death under the laws of the requesting State and the laws of the requested State do not permit such punishment for that offense, extradition may be refused unless the requesting State provides such assurances as the requested State considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

ARTICLE 7

When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested State for an offense other than that for which extradition has been requested, his surrender may [*8] be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.

ARTICLE 8

The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law.

ARTICLE 9

(1) The request for extradition shall be made through the diplomatic channel.

(2) The request shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings.

(3) When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person [*9]  to whom the warrant of arrest refers.

(4) When the request relates to a person already convicted, it must be accompanied by the judgment of conviction and sentence passed against him in the territory of the requesting State, by a statement showing how much of the sentence has not been served, and by evidence proving that the person requested is the person to whom the sentence refers.

ARTICLE 10

(1) Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State.

(2) The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada, or when, in the case of a request emanating [*10] from the United States, they are authenticated by an officer of the Department of State of the United States and are certified by the principal diplomatic or consular officer of Canada in the United States.

ARTICLE 11

(1) In case of urgency a Contracting Party may apply for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. Such application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.

(2) On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

(3) A person arrested shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition accompanied by the documents [*11] specified in Article 9 shall not have been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

ARTICLE 12

(1) A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

(i) He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or

(iii) The requested State has consented to his detention, trial, punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.

(2) The foregoing shall not apply to offenses committed after the extradition.

ARTICLE 13

(1) A requested State upon receiving two or more requests for the extradition of the same person either for the same offense, or for different offenses, shall determine to which of [*12] the requesting States it will extradite the person sought.

(2) Among the matters which the requested State may take into consideration are the possibility of a later extradition between the requesting States, the seriousness of each offense, the place where the offense was committed, the dates upon which the requests were received and the provisions of any extradition agreements between the requested State and the other requesting State or States.

ARTICLE 14

(1) The requested State shall promptly communicate to the requesting State through the diplomatic channel the decision on the request for extradition.

(2) If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested State within such time as may be prescribed by the laws of that State, he may be set at liberty and the requested State may subsequently refuse to extradite that person for the same offense.

ARTICLE 15

(1) To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence [*13]   shall, if found, be surrendered to the requesting State if extradition is granted.

(2) Subject to the qualifications of paragraph (1) of this Article, the above-mentioned articles shall be returned to the requesting State even if the extradition, having been agreed to, cannot be carried out owing to the death or escape of the person sought.

ARTICLE 16

(1) The right to transport through the territory of one of the Contracting Parties a person surrendered to the other Contracting Party by a third State shall be granted on request made through the diplomatic channel, provided that conditions are present which would warrant extradition of such person by the State of transit and reasons of public order are not opposed to the transit.

(2) The Party to which the person has been extradited shall reimburse the Party through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.

ARTICLE 17

(1) Expenses related to the transportation of the person sought to the requesting State shall be paid by the requesting State. The appropriate legal officers of the State in which the extradition proceedings take place shall, by all legal [*14]   means within their power, assist the requesting State before the respective judges and magistrates.

(2) No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested State against the requesting State.

ARTICLE 18

(1) This Treaty shall be ratified and the instruments of ratification shall be exchanged at Ottawa as soon as possible.

(2) This Treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements.

(3) This Treaty shall enter into force upon the exchange of ratifications. n1 It may be terminated by either Contracting Party giving notice of termination to the other Contracting Party at any time and the termination shall be effective six months after the date of receipt of such notice.

n1 Mar. 22, 1976.

[*15]

IN WITNESS WHEREOF the undersigned, being duly authorized thereto by their respective Governments, have signed this Treaty.

DONE in duplicate, in the English and French languages, each language version being equally authentic, at Washington this third day of December, one thousand nine hundred seventy one.

Les Etats-Unis d'Amerique et le Canada, desireux de renforcer la cooperation existant entre les deux pays pour la repression du crime en instituant des dispositions en vue de l'extradition reciproque des delinquants, sont convenus de ce qui suit:

ARTICLE 1

Chaque Partie contractante s'engage a livrer a l'autre Partie, dans les circonstances et sous reserve des conditions indiquees au present Traite, les individus trouves sur son territoire qui ont ete accuses ou declares coupables d'une des infractions couvertes par l'Article 2 du present Traite commise sur le territoire de l'autre ou, aux conditions specifiees au paragraphe 3) de l'Article 3 du present Traite, hors de ce territoire.

ARTICLE 2

1) Les individus seront livres conformement aux dispositions du present Traite pour l'une quelconque des infractions enumerees a l'Annexe jointe audit Traite, et qui en est partie integrante,   [*16]   a condition que ces infractions soient punissables, en vertu des lois des deux Parties contractantes, d'une peine d'emprisonnement de plus d'un an.

2) Sera egalement extrade tout individu qui aura tente de commettre l'une des infractions enumerees a l'Annexe du present Traite, aura complote en vue de la commettre ou y aura ete partie.

3) L'extradition sera egalement accordee pour toute infraction a une loi federale des Etats-Unis dont une des infractions enumerees a l'Annexe ci-jointe ou justifiant l'extradition en vertu du paragraphe 2) du present Article constitue un element important, meme si le transport ou l'utilisation de la poste ou des moyens de communication entre Etats sont egalement des elements de cette infraction particuliere.

ARTICLE 3

1) Aux fins du present Traite, le territoire d'une Partie contractante comprend tout le territoire auquel s'etend la competence de celle-ci, y compris l'espace aerien et les eaux territoriales ainsi que les navires et aeronefs immatricules dans le territoire de cette Partie contractante ou les aeronefs loues sans equipage a une personne qui a le siege principal de son exploitation ou, a defaut, sa residence permanente sur le territoire [*17]   de ladite Partie contractante, si un tel aeronef est en vol ou si un tel navire se trouve en haute mer lorsque l'infraction est commise. Aux fins du present Traite, un aeronef est considere comme etant en vol depuis le moment ou la force motrice est employee pour decoller jusqu'au moment ou l'atterrissage a pris fin.

2) Si l'infraction 23 de l'Annexe ci-jointe est commise a bord d'un aeronef entre le moment ou, l'embarquement etant termine, toutes ses portes exterieures sont fermees et le moment ou l'une de ces portes est ouverte en vue du debarquement, cette infraction ainsi que toute autre infraction couverte par l'Article 2 qui est commise contre les passagers ou l'equipage de cet aeronef a l'occasion de cette infraction sont considerees comme ayant ete commises sur le territoire d'une Partie contractante si l'aeronef etait immatricule dans le territoire de celle-ci, s'il a atterri dans ledit territoire alors que l'auteur presume de l'infraction se trouvait a bord ou s'il a ete loue sans equipage a une personne qui a le siege principal de son exploitation ou, a defaut, sa residence permanente dans le territoire de ladite Partie contractante.

3) Lorsque l'infraction pour laquelle [*18]   l'extradition a ete demandee a ete commise hors du territoire de l'Etat requerant, l'executif ou toute autre autorite competente de l'Etat requis a le pouvoir d'accorder l'extradition si les lois de l'Etat requis donnent competence pour une telle infraction commise dans des circonstances similaires.

ARTICLE 4

1) L'extradition n'est accordee dans aucun des cas suivants:

i) Lorsque l'individu dont l'extradition est demandee ou bien fait l'objet de poursuites ou bien a ete juge et acquitte ou puni, sur le territoire de l'Etat requis, pour l'infraction motivant la demande d'extradition.

ii) Lorsque la poursuite relative a l'infraction est frappee de prescription selon les lois de l'Etat requerant.

iii) Lorsque l'infraction motivant la demande d'extradition revet un caractere politique ou que l'individu dont l'extradition est demandee prouve que la demande d'extradition vise a le mettre en jugement ou a le punir pour une infraction revetant un caractere politique. Si la question se pose de savoir si une affaire tombe sous le coup des dispositions du present alinea, il appartient aux autorites gouvernementales de l'Etat auquel la demande est presentee d'en decider.

2) Les dispositions de [*19]   l'alinea iii) du paragraphe 1) du present Article ne s'appliquent pas a ce qui suit:

i) L'enlevement ou le meurtre d'un individu auquel une Partie contractante est tenue, selon le droit international, d'accorder une protection speciale ou toutes autres voies de fait visant a lui enlever la vie ou a nuire a sa sante physique, ou toute tentative de perpetration d'une telle infraction a l'egard d'un tel individu.

ii) Lorsqu'un individu commet l'infraction 23 de l'Annexe ci-jointe a bord d'un aeronef en service commercial faisant le transport de passagers, ou, a bord d'un tel aeronef, tente de commettre ou complote en vue de commettre cette infraction ou y est partie.

ARTICLE 5

Si une demande d'extradition faite en vertu du present Traite vise un individu qui, au moment de cette demande ou au moment de la commission de l'infraction pour laquelle l'extradition est demandee, est age de moins de dix-huit ans et

considere par l'Etat requis comme etant l'un de ses residents, l'Etat requis peut, s'il est etabli que l'extradition empeche-rait le reclassement social et la rehabilitation de cet individu, recommander a l'Etat requerant de retirer sa demande d'-extradition, en specifiant les raisons [*20]  sur lesquelles il se fonde.

### ARTICLE 6

Lorsque l'infraction motivant la demande d'extradition est punissable de la peine de mort en vertu des lois de l'Etat requerant et que les lois de l'Etat requis n'autorisent pas cette peine pour une telle infraction, l'extradition peut etre refu-see a moins que l'Etat requerant ne garantisse a l'Etat requis, d'une maniere jugee suffisante par ce dernier, que la peine de mort ne sera pas infligee ou, si elle l'est, ne sera pas appliquee.

### ARTICLE 7

Lorsque l'individu dont l'extradition est demandee fait l'objet de poursuites ou subit une peine sur le territoire de l'Etat requis pour une infraction autre que celle pour laquelle l'extradition a ete demandee, sa remise peut etre differee jusqu'a l'issue des procedures et jusqu'a ce qu'il ait purge toute peine qui pourra ou a pu lui etre infligee.

### ARTICLE 8

La decision d'accorder ou de refuser l'extradition doit etre prise conformement a la loi de l'Etat requis et l'individu dont l'extradition est demandee aura droit a tous les recours prevus par ladite loi.

### ARTICLE 9

1) La demande d'extradition doit se faire par la voie diplomatique.

2) La demande doit etre accompagnee du signalement de l'individu recherche,   [*21]  d'un enonce des faits, du texte des dispositions des lois de l'Etat requerant decrivant l'infraction et stipulant la peine a infliger a cet egard ainsi que d'un enonce de la loi relative a la prescription en matiere de procedures judiciaires.

3) Lorsque la demande vise un individu qui n'a pas encore ete declare coupable, elle doit en outre etre accompagnee d'un mandat d'arret emis par un juge ou une autre autorite judiciaire de l'Etat requerant et de tout element de preuve qui, selon les lois de l'Etat requis, justifierait l'arrestation et la mise en jugement dudit individu si l'infraction y avait ete commise, notamment la preuve que l'individu dont on demande l'extradition est bien celui qui est vise par le mandat d'arret.

4) Lorsque la demande vise un individu deja declare coupable, elle doit etre accompagnee du jugement de culpabi-lite et de la sentence prononces contre lui dans le territoire de l'Etat requerant, d'une declaration indiquant quelle partie de la peine reste a purger et de la preuve que l'individu dont l'extradition est demandee est bien celui qui doit purger la peine.

### ARTICLE 10

1) L'extradition ne doit etre accordee que si la preuve est jugee suffisante, selon les [*22]  lois du lieu ou l'individu recherche est trouve, soit pour justifier une mise en jugement si l'infraction dont il est accuse avait ete commise sur le territoire dont ce lieu fait partie, soit pour etablir qu'il est bien l'individu condamne par les tribunaux de l'Etat requerant.

2) Les preuves documentaires a l'appui d'une demande d'extradition, qu'il s'agisse d'originaux ou de copies, doivent etre admises en preuve lors de l'examen de la demande d'extradition lorsque, dans le cas d'une demande emanant du Canada, elles sont legalisees par un fonctionnaire du Ministere de la Justice du Canada et certifiees par le principal agent diplomatique ou consulaire des Etats-Unis au Canada, ou que, dans le cas d'une demande emanant des Etats-Unis, elles sont legalisees par un fonctionnaire du Departement d'Etat des Etats-Unis et certifiees par le principal agent dip-lomatique ou consulaire du Canada aux Etats-Unis.

### ARTICLE 11

1) En cas d'urgence, une Partie contractante peut demander l'arrestation provisoire de l'individu recherche en atten-dant la presentation de la demande d'extradition par la voie diplomatique. La demande d'arrestation doit donner le sig-nalement de l'individu recherche, indiquer [*23]  qu'on se propose de demander l'extradition de cet individu, indiquer si un mandat d'arret a ete emis contre lui ou s'il a ete declare coupable aux termes d'un jugement et fournir, le cas echeant, les autres renseignements qui seraient necessaires pour justifier l'emission d'un mandat d'arret si l'infraction avait ete commise dans le territoire de l'Etat requis ou si l'individu recherche y avait ete condamne.

2) Des reception d'une telle demande, l'Etat requis prend les mesures necessaires pour assurer l'arrestation de l'individu reclame.

3) Un individu arrete doit etre mis en liberte a l'expiration d'un delai de quarante-cinq jours de la date de son arrestation en vertu de cette demande si une demande d'extradition, accompagnee des documents specifies a l'Article 9, n'a pas alors ete recue a son egard. Cette stipulation n'empeche pas d'engager des procedures en vue de l'extradition de l'individu recherche si la demande d'extradition est recue par la suite.

ARTICLE 12

1) Un individu extrade en vertu du present Traite ne doit etre ni detenu, ni juge, ni puni sur le territoire de l'Etat requerant pour une infraction autre que celle ayant motive l'extradition et ne peut non plus etre   [*24]   livre par ledit Etat a un Etat tiers, sauf:

i) S'il a quitte le territoire de l'Etat requerant apres son extradition et y est revenu volontairement;

ii) S'il n'a pas quitte le territoire de l'Etat requerant dans un delai de trente jours apres etre devenu libre de le faire; ou

iii) Si l'Etat requis a consenti soit a ce qu'il soit detenu, juge et puni pour une infraction autre que celle ayant motive son extradition, soit a ce qu'il soit livre a un Etat tiers, a condition que cette autre infraction soit couverte par l'Article 2.

2) Les dispositions qui precedent ne s'appliquent pas aux infractions commises apres l'extradition.

ARTICLE 13

1) Lorsque l'extradition d'un individu est demandee par deux Etats ou plus, soit pour la meme infraction, soit pour des infractions differentes, l'Etat requis doit determiner vers lequel des Etats requerants il extradera l'individu recherche.

2) L'Etat requis peut notamment prendre en consideration les facteurs suivants: la possibilite d'une extradition ulterieure entre les Etats requerants, la gravite de chaque infraction, le lieu ou l'infraction a ete commise, les dates auxquelles les demandes ont ete recues et les dispositions des accords d'extradition [*25]   conclus entre l'Etat requis et le ou les autres Etats requerants.

ARTICLE 14

1) L'Etat requis doit rapidement communiquer a l'Etat requerant, par la voie diplomatique, la decision prise sur la demande d'extradition.

2) Si un mandat ou un ordre d'extradition d'un individu recherche a ete emis par l'autorite competente et que l'individu n'est pas renvoye du territoire de l'Etat requis dans le delai qui peut etre prescrit par les lois de cet Etat, il peut etre libere et l'Etat requis peut, par la suite, refuser de l'extrader pour la meme infraction.

ARTICLE 15

1) Dans la mesure ou le permettent les lois de l'Etat requis et sous reserve des droits des tiers, qui doivent etre dument respectes, tous les objets obtenus par suite de l'infraction ou qui peuvent etre requis a titre de preuve doivent, s'ils sont trouves, etre remis a l'Etat requerant si l'extradition est accordee.

2) Sous reserve des conditions du paragraphe 1) du present Article, les objets ci-dessus mentionnes doivent etre restitues a l'Etat requerant meme si l'extradition, ayant ete accordee, ne peut etre effectuee en raison de la mort ou de l'evasion de l'individu recherche.

ARTICLE 16

1) Le droit de transporter sur le territoire [*26]   d'une des Parties contractantes un individu qui est livre a l'autre Partie contractante par un Etat tiers sera accorde sur demande faite par la voie diplomatique, pourvu que soient reunies les conditions qui justifieraient l'extradition de cet individu par l'Etat de transit et que des raisons d'ordre public ne s'opposent pas a son passage.

2) La Partie vers laquelle l'individu a ete extrade doit rembourser a la Partie sur le territoire de laquelle il est transporte tous les frais encourus par cette derniere a l'occasion de ce transport.

ARTICLE 17

1) Les frais relatifs au transport de l'individu recherche vers l'Etat requerant doivent etre couverts par ce dernier. Les officiers de justice competents de l'Etat dans lequel se deroulent les procedures d'extradition doivent, par tous les moyens juridiques dont ils disposent, aider l'Etat requerant devant les juges et magistrats respectifs.

2) Aucune reclamation d'ordre pecuniaire, decoulant de l'arrestation, de la detention, de l'interrogatoire et de la remise d'individus recherches aux termes du present Traite, ne doit etre presentee par l'Etat requis contre l'Etat requerant.

ARTICLE 18

1) Le present Traite sera ratifie et les instruments [*27] de ratification seront echanges a Ottawa le plus tot possible.

2) Le present Traite terminera et remplacera tous accords d'extradition en vigueur entre les Etats-Unis et le Canada et toutes dispositions relatives a l'extradition contenues dans tout autre accord en vigueur entre eux; toutefois, les infractions enumerees dans ces accords et commises avant l'entree en vigueur du present Traite seront passibles d'extradition en application des dispositions de ces accords.

3) Le present Traite entrera en vigueur le jour de l'echange des ratifications. Il pourra etre denonce a tout moment par l'une des Parties contractantes sur notification a l'autre Partie de son intention d'y mettre fin et, dans ce cas, le Traite cessera d'etre en vigueur six mois apres la date de reception de cette notification.

EN FOI DE QUOI les soussignes, dument autorises par leurs Gouvernements respectifs, ont signe le present Traite.

FAIT en double exemplaire, dans les langues anglaise et francaise, les deux textes faisant egalement foi, a Washington ce troisieme jour de decembre mil neuf cent soixante et onze.

[AMENDING AGREEMENT]

*The Canadian Ambassador to the Secretary of State*

Canadian Embassy

Ambassade [*28] du Canada

Washington, D.C.

June 28, 1974

No. 126
Excellency,

I have the honour to refer to the Treaty on Extradition between the Government of Canada and the Government of the United States signed at Washington on December 3, 1971 and to subsequent discussions between representatives of our two governments concerning the amendment of the said Treaty.

Further to those discussions I now have the honour to propose that the said Treaty be amended as follows:

(1) That Article 4(2)(i) of the Treaty shall be amended to read: "A kidnapping, murder, or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt or conspiracy to commit, or being a party to the commission of, such an offence with respect to any such person."
(2) That clause 26 of the Schedule annexed to the Treaty shall be amended to read: "Offences against the laws relating to the traffic in, production, manufacture or importation of drugs listed in Schedule I to the Single Convention on Narcotic Drugs of March 30, 1961 n1 and of drugs listed in Schedules I, II and III to the Convention on Psychotropic [*29] Substances of February 21, 1971."

n1 TIAS 6298; *18 UST 1559.*

If this proposal meets with the approval of your government, I have the further honour to propose that this Note, which is authentic in English and in French, and your reply shall constitute an amendment to the Treaty on Extradition

between Canada and the United States referred to above, which shall come into force on the date of the entry into force of the said Treaty and which shall be considered an integral part of the said Treaty.

Accept, Excellency, the assurances of my highest consideration.

*French Text of the Canadian Note*

Canadian Embassy

Ambassade du Canada

Washington, D.C.

June 28, 1974

No. 126
Excellence,

J'ai l'honneur de me referer au Traite d'extradition entre le Gouvernement du Canada et le Gouvernement des Etats-Unis signe a Washington le 3 decembre 1971 et aux pourparlers subsequents entre les representants de nos deux gouvernements au sujet de l'amendement dudit Traite.

Comme suite a ces pourparlers, j'ai l'honneur de proposer que [*30]   ledit Traite soit amende comme il suit:

(1) Que l'Article 4(2)(i) du Traite soit amende pour qu'on y lise: "Un enlevement, meurtre ou autre voie de fait contre la vie ou l'integrite physique d'une personne a l'egard de laquelle l'une des Parties contractantes a le devoir, selon le droit international, d'accorder une protection speciale, ou toute tentative ou complot en vue de commettre ou de participer a un tel delit a l'egard d'une telle personne."
(2) Que la clause 26 de l'Annexe au Traite soit amendee pour qu'on y lise: "Des infractions aux lois se rapportant au trafic, a la production, a la fabrication ou a l'importation des drogues enumerees au Tableau I annexe a la Convention unique sur les stupefiants du 30 mars 1961 et des drogues enumerees aux Tableaux I, II et III annexes a la Convention sur les substances psychotropes du 21 fevrier 1971."

Si cette proposition recoit l'approbation de votre Gouvernement, j'ai en outre l'honneur de proposer que cette Note, qui est authentique dans sa version anglaise et francaise, et votre reponse constituent un amendement au Traite d'extradition entre le Canada et les Etats-Unis, dont il est question ci-dessus, lequel prendra effet le [*31]   jour de l'entree en vigueur dudit Traite et sera considere comme partie integrante dudit Traite.

Je vous prie d'agreer, Excellence, l'assurance de ma tres haute consideration.

*The Secretary of State to the Canadian Ambassador*

DEPARTMENT OF STATE

WASHINGTON

July 9, 1974

Excellency:

I have the honor to refer to your note of June 28, 1974, in the English and French languages, relating to amendment of the Treaty on Extradition between the United States of America and Canada, signed at Washington December 3, 1971.

On behalf of the United States of America I confirm the understanding set forth therein and consider that your note and this reply constitute an agreement between the United States and Canada on this matter.

Accept, Excellency, the renewed assurances of my highest consideration.

**SIGNATORIES:**
[SEAL]

GERALD R. FORD
By the President:

JOSEPH JOHN SISCO

*Acting Secretary of State*

FOR THE UNITED STATES OF AMERICA:

William P. Rogers

FOR CANADA:

Mitchell Sharp

POUR LES ETATS-UNIS D'AMERIQUE:

POUR LE CANADA:

M. Cadieux,

Ambassador.

The Honourable

Henry A. Kissinger,

Secretary of State,

Washington, D.C. 20520

L'Ambassadeur,

M. Cadieux.

L'Honorable

Henry A. Kissinger,

Secretaire d'Etat,  [*32]

Washington, D.C. 20520

For the Secretary of State:

Acting Secretary
His Excellency

Marcel Cadieux,

Ambassador of Canada.

## APPENDICES:
SCHEDULE

1. Murder; assault with intent to commit murder.

2. Manslaughter.

3. Wounding; maiming; or assault occasioning bodily harm.

4. Unlawful throwing or application of any corrosive substances at or upon the person of another.

5. Rape; indecent assault.

6. Unlawful sexual acts with or upon children under the age specified by the laws of both the requesting and requested States.

7. Willful nonsupport or willful abandonment of a minor when such minor is or is likely to be injured or his life is or is likely to be endangered.

8. Kidnapping; child stealing; abduction; false imprisonment.

9. Robbery; assault with intent to steal.

10. Burglary; housebreaking.

11. Larceny, theft or embezzlement.

12. Obtaining property, money or valuable securities by false pretenses or by threat of force or by defrauding the public or any person by deceit or falsehood or other fraudulent means, whether such deceit or falsehood or any fraudulent means would or would not amount to a false pretense.

13. Bribery, including soliciting, offering and accepting.

14. Extortion.

15. Receiving [*33]   any money, valuable securities or other property knowing the same to have been unlawfully obtained.

16. Fraud by a banker, agent, or by a director or officer of any company.

17. Offenses against the laws relating to counterfeiting or forgery.

18. Perjury in any proceeding whatsoever.

19. Making a false affidavit or statutory declaration for any extrajudicial purpose.

20. Arson.

21. Any act done with intent to endanger the safety of any person travelling upon a railway, or in any aircraft or vessel or other means of transportation.

22. Piracy, by statute or by law of nations; mutiny or revolt on board a vessel against the authority of the captain or commander of such vessel.

23. Any unlawful seizure or exercise of control of an aircraft, by force or violence or threat of force or violence, or by any other form of intimidation, on board such aircraft.

24. Willful injury to property.

25. Offenses against the bankruptcy laws.

26. Offenses against the laws relating to the traffic in, production, manufacture, or importation of narcotic drugs, Cannabis sativa L., hallucinogenic drugs, amphetamines, barbiturates, cocaine and its derivatives.

27. Use of the mails or other means of communication [*34]   in connection with schemes devised or intended to deceive or defraud the public or for the purpose of obtaining money or property by false pretenses.

28. Offenses against federal laws relating to the sale or purchase of securities.

29. Making or having in possession any explosive substance with intent to endanger life, or to cause severe damage to property.

30. Obstructing the course of justice in a judicial proceeding, existing or proposed, by:

    a) dissuading or attempting to dissuade a person by threats, bribes, or other corrupt means from giving evidence;

    b) influencing or attempting to influence by threat, bribes, or other corrupt means a person in his conduct as a juror; or

    c) accepting a bribe or other corrupt consideration to abstain from giving evidence or to do or to refrain from doing anything as a juror.

    ANNEXE

1. Le meurtre; les voies de fait avec intention de commettre un meurtre.

2. L'homicide involontaire (manslaughter).

3. Les blessures; la mutilation; ou les voies de fait occasionnant des lesions corporelles.

4. Le fait de lancer ou appliquer, illicitement, des substances corrosives sur une autre personne.

5. Le viol; l'attentat a la pudeur.

6. Les actes sexuels [*35]   illicites commis avec des enfants, ou sur la personne de tels enfants n'ayant pas atteint l'age specifie par les lois de l'Etat requerant et celles de l'Etat requis.

7. Le refus de pourvoir a la subsistance, ou l'abandon volontaire d'un mineur lorsque ce mineur est ou sera probablement blesse ou que sa vie est ou sera probablement en danger.

8. L'enlevement (kidnapping); le vol d'enfant; le rapt (abduction); l'emprisonnement illegal.

9. Le vol qualifie; les voies de fait dans l'intention de voler.

10. Le cambriolage; l'effraction.

11. Le larcin, le vol ou le detournement.

12. L'obtention de biens et de sommes d'argent ou de valeurs par des faux-semblants ou par menace de violence ou en fraudant le public ou une personne quelle qu'elle soit par supercherie, mensonge ou d'autres moyens dolosifs, que cette supercherie, ce mensonge ou ces autres moyens dolosifs constituent ou non un faux-semblant.

13. La corruption, notamment la sollicitation, l'offre et l'acceptation y relatives.

14. L'extorsion.

27 U.S.T. 983; 1971 U.S.T. LEXIS 226, *

15. La reception d'argent, de valeurs ou d'autres biens que l'on sait avoir ete obtenus illegalement.

16. La fraude commise par un banquier ou un agent ou par un administrateur ou membre de   [*36]   la direction d'une compagnie.

17. Les infractions aux lois ayant trait a la contrefacon ou au faux.

18. Le parjure au cours de procedures quelles qu'elles soient.

19. Le fait de souscrire un faux affidavit ou de faire une declaration solennelle fausse a une fin extrajudiciaire.

20. Le crime d'incendie.

21. Tout acte commis dans l'intention de porter atteinte a la securite d'une personne voyageant en chemin de fer, a bord d'un aeronef ou d'un navire ou par un autre moyen de transport.

22. La piraterie, aux termes d'une loi ou du droit des gens; la mutinerie ou la revolte, a bord d'un navire, contre l'autorite du capitaine ou du commandant de ce navire.

23. Toute prise de possession illicite ou tout exercice illicite du controle d'un aeronef, par la force ou la violence, la menace de force ou de violence ou toute autre forme d'intimidation, a bord de cet aeronef.

24. Les dommages causes volontairement a des biens.

25. Les infractions aux lois de la faillite.

26. Les infractions aux lois ayant trait au trafic, a la production, la fabrication ou l'importation de stupefiants, Cannabis sativa L., drogues hallucinogenes, amphetamines, barbituriques, cocaine et ses derives.

27. L'usage de   [*37]   la poste ou d'autres moyens de communication relativement a des projets concus ou formes pour leurrer ou frauder le public ou dans le dessein d'obtenir de l'argent ou des biens par des faux-semblants.

28. Les infractions aux lois federales ayant trait a la vente et a l'achat de valeurs mobilieres.

29. La fabrication ou la possession d'une substance explosive quelconque dans le but de mettre en danger la vie des personnes ou de causer de graves dommages aux biens.

30. Le fait d'entraver le cours de la justice dans une procedure judiciaire, existante ou projetee:

     a) dissuadant ou tentant de dissuader une personne, par des menaces, des pots-de-vin ou autres moyens de corruption, de rendre temoignage;

     b) influencant ou tentant d'influencer, par des menaces, des pots-de-vin ou autres moyens de corruption, une personne dans sa conduite comme jure;

     c) acceptant un pot-de-vin ou une autre compensation venale pour s'abstenir de rendre temoignage ou pour faire ou s'abstenir de faire quelque chose a titre de jure.

# EXHIBIT B

