JP:WMP
F.#2008R00809

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

IN THE MATTER OF
THE EXTRADITION OF                              08 M 445 (RLM)
KUSHI SAMUELS,
    also known as,
    "Patrick Browne" and
    "Abdul Drew."

- - - - - - - - - - - - - - - - - X

<u>GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT
OF THE FUGITIVE KUSHI SAMUELS' EXTRADITION</u>

                                BENTON J. CAMPBELL
                                United States Attorney
                                Eastern District of New York
                                271 Cadman Plaza East
                                Brooklyn, New York  11201

WINSTON M. PAES
Assistant U.S. Attorney
    (Of Counsel)

PRELIMINARY STATEMENT

The government submits this memorandum in support of its request that the Court issue a Certificate of Extraditability as to the fugitive Kushi Samuels, also known as "Patrick Browne" and "Abdul Drew," in the above-captioned matter. For the reasons set forth below, the government's request should be granted.

BACKGROUND

On May 9, 1995, an information and arrest warrant was issued for Kushi Samuels by Jean Parent, Justice of the Peace, charging Kushi Samuels with one count of first-degree murder contrary to Section 235 of the Criminal Code of Canada and two counts of attempted murder contrary to Section 239 of the Criminal Code of Canada.

At the request of Canadian authorities, on May 9, 2008, the government obtained a provisional arrest warrant for Kushi Samuels issued by the Honorable Joan M. Azrack in the Eastern District of New York.  On or about May 19, 2008, Kushi Samuels was arrested in Brooklyn, New York pursuant to the provisional arrest warrant and brought before Your Honor.  At the May 19th arraignment, Your Honor issued a permanent order of detention pending a decision on extradition.  On July 4, 2008, the Government of Canada filed documents formally requesting the

extradition of Kushi Samuels (hereinafter, the "Extradition Request").[1]

ARGUMENT

THE GOVERNMENT OF CANADA HAS SATISFIED
ITS EXTRADITION TREATY OBLIGATIONS AND THE
COURT SHOULD ISSUE A CERTIFICATE OF EXTRADITABILITY

A. Applicable Law

Under Title 18, United States Code, Section 3184, the examining judicial officer must hold a hearing to determine whether a person arrested pursuant to a complaint in the United States on behalf of a foreign government is subject to surrender to the requesting country under the terms of the pertinent treaty and relevant law. See In re Extradition of Hon-Ming, No. 06-M-0296(RLM), 2006 U.S. Dist. LEXIS 88326, at *8-9 (E.D.N.Y. Dec. 6, 2006). A magistrate judge is authorized to act as an extradition officer under 18 U.S.C. § 3184. Id. at *10; Lo Duca v. United States, 93 F.3d 1100, 1109 (2d Cir. 1996).

The inquiry in extradition proceedings is "exceedingly narrow" and "the Court does not determine the ultimate guilt or innocence of the individual whose extradition is sought." Hon-

---

[1] Attached as Exhibit 1 is the Extradition Request. The Extradition Request consists of: (i) the Affidavit of Law of Mario Longpré, Assistant Chief Crown Prosecutor, dated June 30, 2008, to which is attached a copy of the information and arrest warrant ("Longpré Aff."); and (ii) the Affidavit of Fact of Stephen Abraham, Detective Sergeant, Montreal City Police Department, dated June 30, 2008, to which is attached Appendices A-C ("Abraham Aff.").

Ming, 2006 U.S. Dist. LEXIS 88326, at *9; see also Charlton v. Kelly, 229 U.S. 447, 449 (1913); Melia v. United States, 667 F.2d 300, 302 (2d Cir. 1981); United States v. Pena-Bencosme, No. 05-M-1518(SMG), 2006 U.S. Dist. LEXIS 82579, at *6-7 (E.D.N.Y. Nov. 13, 2006); In re Extradition of Ernst, No. 97 Crim. Misc.1 PG.22, 1998 U.S. Dist. LEXIS 10523, at *4 (S.D.N.Y. Jul. 14, 1998). If the Court decides that the elements necessary for extradition are present, the Court will incorporate these determinations in factual findings and conclusions of law styled as a Certification of Extraditability, which is forwarded to the Department of State for disposition by the Secretary of State.[2]  See Shapiro v. Ferrandina, 478 F.2d 894 (2nd Cir. 1973).  As this Court has noted before: "In determining whether to certify extraditability, the Court must liberally construe the applicable treaty to effect its underlying purpose of delivering criminals to justice." Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *18-19; see also Spatola v. United States, 741 F. Supp. 362, 371 (E.D.N.Y. 1990), aff'd, 925 F.2d 615 (2d Cir. 1991)(citations omitted).

If the fugitive is determined to be extraditable, he is committed to the custody of the United States Marshal to await the determination by the Secretary of State and transfer to the representatives of the requesting state.  18 U.S.C. § 3184.  The

---

[2] Attached as Exhibit 5 is the government's Proposed Order.

3

Court's Certification of Extraditability is provided to the Secretary of State, together with a copy of any evidence presented on behalf of the fugitive. Id. The decision to surrender the fugitive rests with the Secretary of State. Id.

Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to extradition proceedings. See Fed. R. Crim. P. 1(a)(5)(A) (providing that the Federal Rules of Criminal Procedure do not apply to "the extradition and rendition of a fugitive"); Fed. R. Evid. 1101(d)(3) ("[t]he rules (other than with respect to privileges) do not apply . . . [to p]roceedings for extradition or rendition"). Consequently, hearsay evidence is admissible and may support a finding of extraditability. See Collins v. Loisel, 259 U.S. 309, 317 (1922); Simmons v. Braun, 627 F.2d 635, 636 (2d Cir. 1980); In re Extradition of Tuniewicz, No. 06-M-1059(VVP), 2007 U.S. Dist. LEXIS 25789, at *8 (E.D.N.Y. Apr. 6, 2007).

Moreover, an extraditee's right to controvert the evidence introduced against him is limited to testimony which explains rather than contradicts the demanding country's proof. Shapiro, 478 F.2d at 901; see also Pena-Bencosme, 2006 U.S. Dist. LEXIS 82579, at *9-10; In re Extradition of McMullen, 769 F. Supp. 1278, 1292 (S.D.N.Y. 1991). He may not introduce evidence that does any of the following: (1) conflicts with the evidence submitted on behalf of the demanding state, Collins, 259 U.S. at

4

315-17; (2) establishes an alibi, Abu Eain v. Adams, 529 F. Supp. 685 (N.D. Ill. 1980); (3) sets up an insanity defense, Charlton, 229 U.S. at 462; or (4) impeaches the credibility of the demanding country's witnesses, Germany v. United States, Civ. No. 06-1201(DLI), 2007 U.S. Dist. LEXIS 65676, at *25-26 (E.D.N.Y. Sep. 5, 2007). Courts have held that even if these limitations against the extraditee's right to controvert the evidence against him were not in effect, evidence introduced by the extraditee that "merely raises doubts about the reliability of the government's proof is insufficient to defeat an extradition request." Pena-Bencosme, 2006 U.S. Dist. LEXIS 82579, at *35; In re Extradition of Singh, 170 F. Supp. 2d 982, 1013 (E.D. Cal. 2001); United States v. Fernandez-Morris, 99 F. Supp. 2d 1358, 1361 (S.D. Fla. 1999); Freedman v. United States, 437 F. Supp. 1252, 1266 (N.D. Ga. 1977).

For these reasons, extradition treaties do not contemplate the introduction of testimony of live witnesses at extradition proceedings because to do so "would defeat the whole object of the treaty." Shapiro, 478 F.2d at 902, quoting Bingham v. Bradley, 241 U.S. 511, 517 (1916). Indeed, unique rules of wide latitude govern reception of evidence in extradition hearings. In re First National City Bank of New York, 183 F. Supp. 865, 871 (S.D.N.Y. 1960). As noted above, hearsay is admissible in extradition proceedings. In addition, a finding of extraditability may be, and typically is, based entirely on

5

documentary evidence.  Shapiro, 478 F.2d at 902-03; O'Brien v. Rozman, 554 F.2d 780, 783; In re Extradition of Edmonson, 352 F. Supp. 22, 24 (D. Minn. 1972).  Documentary proof is admissible, provided it has been authenticated so as to entitle it to be admissible in the requesting jurisdiction.  18 U.S.C. § 3190; see also Article 10, the Treaty on Extradition between the United States of America and Canada of December 3, 1971, entered into force on March 22, 1976 (TIAS 8237), the Protocol Amending the Extradition Treaty with Canada of January 11, 1988, entered into force on November 26, 1991, and the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, entered into force on April 30, 2003 (the "Extradition Treaty").

In addition, defenses against extradition which "savor of technicality," Bingham, 241 U.S. at 517, should be rejected by the Court as they are peculiarly inappropriate in dealings with a foreign nation.  An extradition hearing is not the appropriate venue for the parties or the Court to explore the motives of the requesting state, see, e.g., In re Gonzalez, 217 F. Supp. 717, 722 n.15 (S.D.N.Y. 1963); In re Lincoln, 228 Fed. 70, 74, (E.D.N.Y. 1915); see also In re Extradition of Singh, 123 F.R.D. 127, 129-37 (D.N.J. 1987)(citing cases on doctrine of non-inquiry), whether the Secretary of State should surrender the fugitive to the requesting state, see Lo Duca, 93 F.3d at 1104.

The Court must issue a certificate of extraditability pursuant to U.S.C. § 3184 when: (1) there is a valid extradition treaty between the United States and the requesting country; (2) there are criminal charges pending against the extraditee and the required documents have been presented, translated and duly authenticated by the United States Consul; (3) there is probable cause to believe the individual arrested is the individual sought; (4) there is probable cause to believe the extraditee committed the offenses charged; and (5) the offenses charged are extraditable and dual criminality is established.  See Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *11; In re Extradition of Waters, No. 03-M-1072(CLP), 2003 U.S. Dist. LEXIS 24399, at *2 (E.D.N.Y. Nov. 24, 2003); Ernst, 1998 U.S. Dist. LEXIS 10523, at *4; see also Collins, 259 U.S. at 314-17 (1922).

B.   Application of Law

In this case, the documents submitted by the Government of Canada and the accompanying sworn declarations from the United States Department of State plainly satisfy the requirements for issuance of a Certificate of Extraditability.

1.   A Valid Treaty Exists

The declaration of Heather McShain, an Attorney-Adviser in the Office of the Legal Adviser, United States Department of State, filed along with the Extradition Request, establishes that there is a valid treaty of extradition between the United States

7

and Canada.[3]  A copy of the treaty and the protocols amending the treaty are attached to the McShain declaration.

   2.   Criminal Charges are Pending Against Samuels
        and the Documents Have Been Properly Presented
        and Authenticated

The Extradition Request clearly states that the three counts against Kushi Samuels for first-degree murder and attempted under the Criminal Code of Canada are pending, and that the arrest warrant issued by Canadian authorities is in full force and effect.[4]  Indeed, although the crimes charged occurred on April 22, 1995, the Criminal Code of Canada has no prescribed period or statue of limitations governing the crimes of first-degree murder and attempted murder.[5]

Article 11 of the Extradition Treaty requires submission of a formal extradition request within 60 days of the fugitive's provisional arrest.  Kushi Samuels was provisionally arrested on May 19, 2008.  The Extradition Request was submitted to the United States Consulate on July 8, 2008, in advance of the 60-day deadline.[6]  In addition, the papers are properly authenticated under 18 U.S.C. § 3190 since they are accompanied

---

   [3]  Attached as Exhibit 2 is the Declaration of Heather McShain, along with its attachments.

   [4]  See Exh. 1, Longpré Aff. ¶¶ 7-9.

   [5]  See Exh. 1, Longpré Aff. ¶¶ 19-20.

   [6]  See Exh. 1, Certificate by Keith Powell, II.

8

by a certificate from Keith Powell, II, the Consul General of the United States at Ottawa, Canada, establishing that they would be admissible for similar purposes in the courts of Canada.[7]  See Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *24 ("The diplomatic or consular officer's certificate is conclusive on the propriety and legality of the underlying authentications."); see also Messina v. United States, 728 F.2d 77, 80 (2d. Cir. 1984); Galanis v. Pallanck, 568 F.2d 234, 230 (2d Cir. 1977).

   3.   There Is Probable Cause Establishing the Identity of Samuels

Kushi Samuels is named in the arrest warrant (File: 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-957), and Kushi Samuels is named repeatedly throughout the Extradition Request as a defendant in the criminal matter in Canada.  The Extradition Request includes a photograph of the fugitive Kushi Samuels, which photograph is clearly of the same Kushi Samuels presently in custody in the United States.[8]  In addition, when Kushi Samuels was arrested on May 19, 2008, he was found with identification in the name of "Abdul Drew."[9]  The fingerprints in the United States database under the name "Abdul Drew" matched the fingerprints of Kushi Samuels' right hand in

---

[7]  Id.

[8]  See Exh. 1, Abraham Aff., Appendix A.

[9]  Attached as Exhibit 3 are copies of a social security card, a New York State Department of Correction identification and employment identification bearing the name "Abdul Drew" and the fugitive Kushi Samuels' photograph.

9

the Canadian files.[10] In addition, following his arrest in the United States on May 19, 2008, the fugitive before Your Honor signed a consular notification form in the name of "Kushi Samuels."[11] Accordingly, there is probably cause to believe that the person named in the Extradition Request is the fugitive before Your Honor.

    4.   <u>There Is Probable Cause To Believe Samuels Committed the Offenses Charged</u>

The fugitive Kushi Samuels is duly and legally charged with having committed, in the jurisdiction of Canada, the crimes of one count of first-degree murder contrary to Section 235 of the Criminal Code of Canada and two counts of attempted murder contrary to Section 239 of the Criminal Code of Canada.[12] The first charge provides that any person who commits first-degree murder or second-degree murder is guilty of an indictable offense and shall be sentenced to imprisonment for life.[13] The second charge, as it existed at the time of the offenses, provides that every person who attempts by any means to commit murder is guilty of an indictable offense and liable to imprisonment for life.[14]

---

[10] <u>See</u> Exh. 1, Abraham Aff. ¶¶ 40-42.

[11] Attached as Exhibit 4 is the consular notification form with the fugitive Kushi Samuels' signature.

[12] <u>See</u> Exh. 1, Longpré Aff. ¶¶ 7-13.

[13] <u>Id</u>. ¶ 17.

[14] <u>Id</u>. ¶ 18.

The standard of probable cause used in extradition proceedings is a low standard, and the "evidence presented need only support a reasonable belief that [the accused] was guilty of the crimes charged." Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *22-23, quoting Austin v. Headley, 5 F.3d 598, 605 (2d Cir. 1993)(internal quotations omitted); see also Pena-Bencosme, 2006 U.S. Dist. LEXIS 82579, at *26 ("To support an extradition request, the prosecution need only meet the relatively modest burden of demonstrating probable cause."); In re Extradition of Atta, 706 F. Supp. 1032, 1050 (E.D.N.Y. 1989)("Evidence must be produced that is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt."). In addition, the law is clear in this Circuit that "hearsay evidence, including multiple hearsay and the unsworn statements of absence witnesses, is admissible at extradition hearings and may support a finding of extraditability." Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *27, citing Simmons, 627 F.2d at 636; see also Pena-Bencosme, 2006 U.S. Dist. LEXIS 82579, at *7; Marzook v. Christopher, 924 F. Supp. 565, 592 (S.D.N.Y. 1996). Indeed, "a determination of probable cause in an extradition proceeding may rest entirely on hearsay." In re Ryan, 360 F. Supp. 270, 273 (E.D.N.Y. 1973), citing Shapiro, 478 F.2d at 905.

11

The Abraham Aff. provides the details that establishes probable cause that Kushi Samuels committed the following offenses: (i) one count of first-degree murder of Nicholas Rodriguez, contrary to Section 235(1) of the Criminal Code of Canada; (ii) one count of attempted murder of Miguel Millings, contrary to Section 239 of the Criminal Code of Canada; and (iii) one count of attempted murder of Asher Manget, contrary to Section 239 of the Criminal Code of Canada.[15]  Since the Abraham Aff. has been properly authenticated by the United States consular officer in Canada, the Court must accept "as true all the statements and offers of proof" in the Abraham Aff., regardless of the hearsay in it, and "the question of the weight or reliability of that evidence is not an appropriate consideration in an extradition proceeding."  Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *24-25; see also Marzook, 924 F. Supp. at 592.

The Abraham Aff. establishes that according to investigators in Canada, the fugitive Kushi Samuels and another individual, Desta Barnes, were involved in a shooting at a reception hall at 4225 Notre-Dame Street West in Montreal, Canada (the "reception hall") at approximately 2:50 a.m. on Saturday, April 22, 1995.  Asher Manget, one of the victims who survived the shooting, observed Kushi Samuels and Desta Barnes holding

---

[15]  See Exh. 1, Abraham Aff. ¶ 3.

something under a cloth while at the reception hall on the night of the shooting.[16]  Mr. Manget was at the reception hall along with his friends Bernard Gary Rodriguez, Marcus Rodriguez and Wilfred Jackson.  Nicholas Rodriguez, a victim who was killed that night, is the brother of Bernard Gary Rodriguez and Marcus Rodriguez.[17]

The Abraham Aff. establishes that Marcus Rodriguez saw Kushi Samuels, who he knew from having previously spoken to him, talking to two other black males at the reception hall the night of the shooting.[18]  Bernard Gary Rodriguez also saw Kushi Samuels and Desta Barnes enter the reception hall a few minutes before the shooting.[19]  Nicholas Rodriguez arrived at the reception hall, went to the washroom, and then came out and joined his brother Marcus Rodriguez and his friends.[20]  Shortly thereafter, Kushi Samuels came out of the washroom and headed towards the front door of the reception hall.[21]  At this time, Miguel Millings, the third victim who was left paralyzed from the waist down after the shooting, was in the front area of the reception

---

[16] Id. ¶ 21.

[17] Id. ¶ 45.

[18] Id.

[19] Id. ¶ 33.

[20] Id. ¶ 45.

[21] Id.

13

hall talking with a female; he was approached by Nicholas Rodriguez and the two of them exited the reception hall. Approximately 30 to 40 seconds later, there were gunshots.[22] Asher Manget jumped in front of Marcus Rodriguez, who took cover behind a table.[23] Mr. Manget saw Kushi Samuels standing straight across from him and start shooting inside the reception hall while Desta Barnes was shooting outside the reception hall.[24] Asher Manget was shot in his hand, knee and thigh.[25] Nicholas Rodriguez and Miguel Millings were also shot and were lying on the ground outside the reception hall.[26] Mr. Manget saw Kushi Samuels and Desta Barnes run away from the reception hall after the shooting.[27]

Mr. Manget identified Kushi Samuels as the shooter inside the reception hall from a book with photographs of juveniles.[28] He knows Kushi Samuels because they lived together for a month, approximately two years prior to the shooting on

---

[22] Id.

[23] Id.

[24] Id. ¶ 21.

[25] Id.

[26] Id. ¶ 45.

[27] Id. ¶ 21.

[28] Id. ¶¶ 21-22.

14

April 22, 1995.[29] Nicholas Rodriguez was struck by three bullets, including a lethal shot to his head.[30] Miguel Millings was also struck by three bullets, which left him paralyzed from the waist down and caused him to lose the use of an eye.[31] Asher Manget was also struck by multiple bullets and sustained injuries to his hand, knee cap and thigh.[32]

This evidence plainly establishes probable cause to believe that Kushi Samuels engaged in conduct constituting the crimes of murder in the first-degree and attempted murder.

    5.    <u>The Offense Charged Is Extraditable - Dual Criminality Is Established</u>

The extraditablity of the offense charged is governed by Article 2 of the Extradition Treaty. The Extradition Treaty provides that "[e]xtradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or any form of detention for a term exceeding one year or any greater punishment." Extradition Treaty, Art. 2, cl. 1.[33] Thus, the treaty definition of extraditable offenses embodies the requirement of dual

---

[29] <u>Id</u>. ¶ 21.

[30] <u>Id</u>. ¶¶ 9, 26.

[31] <u>Id</u>. ¶¶ 9, 25.

[32] <u>Id</u>. ¶ 21.

[33] <u>See</u> Exh. 2; as amended by an exchange of notes on June 28 and July 9, 1974.

15

criminality, which in this case requires that the fugitive's offenses must be punishable both in Canada and the United States by a term of imprisonment in excess of one year. This conforms with case law in this Circuit as to the requirement of dual criminality when extradition is sought by a foreign state. See Hon-Ming, 2006 U.S. Dist. LEXIS 88326, at *13; Spatola, 741 F. Supp. at 371.

Kushi Samuels is charged in Canada with one count of first-degree murder and two counts of attempted murder. The evidence outlining his offenses is detailed in the Abraham Aff., and is described more fully in sub-heading 4 above (There is Probable Cause to Believe Samuels Committed the Offenses Charged). As noted above, the crimes of first-degree murder and attempted murder are both punishable by life imprisonment under the Criminal Code of Canada.

First-degree murder and attempted murder are also unlawful in the United States. Under federal law, Kushi Samuels' conduct would constitute the crimes of murder in the first-degree, 18 U.S.C. § 1111(a), and attempt to commit murder, 18 U.S.C. § 1113. A person commits murder in the first-degree by "any kind of willful, deliberate, malicious, and pre-meditated killing . . . or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed." 18 U.S.C. § 1111(a). Murder is defined as the unlawful killing of a human being with malice

aforethought. Id. Samuels' conduct would satisfy all of the elements of the first-degree murder and attempted murder crimes, except perhaps those elements required to establish federal jurisdiction. A person who is guilty of murder in the first degree shall be punished by death or by imprisonment for life. 18 U.S.C. § 1111(b). A person who is guilty of attempted murder can be imprisoned for a term not to exceed twenty-five years. 18 U.S.C. § 1113.

Similarly, Samuels' conduct is unlawful under the laws of the State of New York. Under New York law, a person is guilty of second-degree murder when "with intent to cause the death of another person, he causes the death of such person or of a third person" or "under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25. Samuels' conduct would satisfy all of the elements of the second-degree murder and attempted murder crimes under New York law. Murder in the second degree is a Class A-1 felony. Id. For a class A felony, the maximum of an indeterminate sentence shall be life imprisonment. N.Y. Penal Law § 70.00(2)(a). For a class A-1 felony, the minimum period shall not be less than fifteen years nor more than twenty-five years. N.Y. Penal Law § 70.00(3)(a)(i). In addition, an attempt to commit a crime is a class B felony when the crime attempted is a class A-I felony of murder in the

17

second degree.  N.Y. Penal Law § 110.05(3).  For a class B felony, the term shall be fixed by the court, and shall not exceed twenty-five years.  N.Y. Penal Law § 70.00(2)(b).

Accordingly, under both the law of Canada and the law of the United States, each of Kushi Samuels' three offenses are crimes that are punishable by a term of imprisonment in excess of one year, and therefore, the offenses are extraditable pursuant to Article 2 of the Extradition Treaty.[34]

---

[34] It is not necessary that the name by which the crime is described be the same or that the sentence for the crime be the same in both countries.  Rather, all that is required is that the particular act charged is criminal in both countries and that it meets the requirements of the treaty between the two countries.  See Collins, 259 U.S. at 312; Lo Duca, 93 F.3d at 1111-12; Messina, 728 F.2d at 79.

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court issue a Certificate of Extraditability as to the fugitive Kushi Samuels, also known as "Patrick Browne" and "Abdul Drew."

Dated:   Brooklyn, New York
         September 2, 2008

                                    Respectfully submitted,

                                    BENTON J. CAMPBELL
                                    United States Attorney
                                    Eastern District of New York


                              By:         /s/
                                    WINSTON M. PAES
                                    Assistant U.S. Attorney
                                    (718) 254-6023




cc:  Justine Harris, Esq. (By Hand and ECF)
     Clerk of the Court (RLM) (By ECF) (w/o enclosures)